The opinion of the court was pronounced by
Eustis, C. J.
The petition in this case is in the name of John L. Lewis, the sheriff of the parish ;of Orleans, averring, that he is by virtue of his office the keeper of the prison of said parish, and is entitled by virtue thereof to the custody of all slaves, runaway and apprehended within said parish, and of all free persons of color who may come within said parish with intent to reside in the State contrary to the statutes, and also of all free persons of color coming as mariners to the port of New Orleans, and to receive the fe.es and emoluments appertaining by law to said office; that the defendant takes upon himself to exercise the office of keeper of said parish prison, to the exclusion and injury of the petitioner in this; that he receives into his custody runaway slaves and free persons of color., and receives from .them and their owners, the fees and perquisites of said office; that he has confined divers free persons of color and runaway slaves, a list of which is appended; that he has demanded said prisoners of the defendant, who has refused to .deliver them ; and, by reason thereof, he is prevented from performing the duties imposed on him, as aforesaid, by the laws of the State, and made liable to the penalties thereof. He prays for a writ of mandamus, commanding the delivery of the prisoners into his custody, with the papers relating to their commitment, and that the defendant be prohibited from receiving other runaway slaves or free persons of color into his custody, &c.
The defendant contested the right of the plaintiff to the custody of the parties mentioned in the petition, and alleged, that by law, the Second Municipality had the sole and exclusive right to the custody of said persons, and to all fees arising from said custody, and that the defendant was gaoler of the said municipality, and retained the custody of said persons by its authority. There was judgment in the district court, by which it was decreed that the prisoners named in the list annexed to the petition, and all others, runaways and free persons of color residing without permission in .the State, or there coming by sea, be delivered to the sheriff, with the necessary documents, books and papers to them relating, and that the defendant Hackett be perpetually prohibited from receiving such persons as aforesaid in future. The-defendant has appealed.
Appended to the petition of appeal is an affidavit that the matter in controversy in this suit amounts to the sum of one thousand dollars. Under the authority of the case of Prieur and Lubatut v. The President and Directors of the Commercial Bank of New Orleans, 7 L. R., 509, this court has jurisdiction to examine and decide this case, as we consider it, in point of fact, a controversy concerning the fees and emoluments resulting from the custody of prisoners of the character mentioned.
*93 The correctness of the judgment of the district court is not contested, .except so far as it relates to runaway slaves; the inquiry then is as to the custody of this class of prisoners, whether it rightfully belongs to the sheriff of the parish o.f Orleans, as keeper of the parish prison, or to the Second Municipality, the real party defendant in this suit.
It is admitted on behalf of the relator that by the act of 1806, slaves arrested within the city were to be disposed of as directed by the mayor and city council; and that on the division of the city, the control of this class of prisoners was reserved to the several municipalities. But it is contended, that by an act of the Legislature of the year 1848, this right on the part of municipalities has been taken away, and vested in the sheriff of the parish of Orleans. Previous to this act, the statutes on that subject provided fully for the discovery, arrest and custody of runaway slaves; depots were established at different points in the State, and certain municipal corporations were authorized to employ the said slaves at labor, on their public works. They formed a system of police for this class of prisoners. The law, which it is contended changes this system and makes the prison of each parish the sole place of custody of runaway slaves, was passed on the 16th of March, 1848, it is entitled an act “To regulate and define the fees to be paid by owners of runaway slaves for the taking up and confintment of the same,” &c.
It is contended that this act is unconstitutional: it being in conflict with the 118th article of the Constitution, which provides that “ every law passed by the Legislature shall embrace but one object, and that shall be expressed in the title.”
This statute, purporting to regulate and define the fees to be paid for the arrest and confinement of slaves, in its first section provides, that every person taking up a runaway slave, .shall immediately convey the same before the nearest justice of the peace, who shall either .commit said slave to the parish prison, or send him to the .owner, employer or overseer, if known ; who shall pay the person taking him up, the rates hereafter specified, to wit, &c.
Thus we see, that by making the parish prison the place of custody for runaway slaves, the legislation on this subject, which dates as far back as 1806, is completely and radically changed. In the 5th section of this statute, it is made expressly applicable to all incorporated towns and cities. This being the effect of the statute, what other object can be attributed to it, under a serious and sound construction 1 The object of this law, then, was to make a new provision for the custody and security of runaway slaves, to which the fees for their caption and support were infinitely subordinate. ¥e are not disposed to interpret the title of a law under the Constitution, in any strict or technical sense, but we think it must be admitted that the object of the 118th art. of the Constitution was to make it obligatory on the Legislature to state the object of eveiy aw in its title, according to the understanding of reasonable men. Had the title of this act been generally for the arrest and custody of runaway slaves, eveiy thing germain to that object would be fairly included under such a title; but the difficulty is, that the provision of this statute to regulate and define fees, appears to exclude the general and sweeping object of the statute itself. Who, for instance, in examining our statutes, passed in obedience to the provisions of our Constitution, could reasonably suppose that a law of this extensive and important operation, relating to this description of property, would be found under the title of this act ? Or, when the act was called up by its title in the Legisla *94 ture, what member, unless he had heard the whole act read, could have any idea of its contents? We are bound to consider the letters “e t c” in an act, as having no meaning under our Constitution.
It is true, that, the art. 118 is, in its terms declaratory, and not prohibitory; but we consider its force is not the less on that account. As we stated in the case of Walker v. Caldwell, 4th Ann. 297, for the purpose of preventing future abuses in legislation, the Constitution has established its forms ; and we believe their observance is imperative on every branch of the government, as much so as any other provisions of the Constitution. Those who are aware of the abuses that existed, were united in opinion as to the absolute necessity of preventing their recurrence. It is idle to expect obedience to laws unless they are plain, simple and easy to be 'understood. A provision, hidden under a mass of verbiage of a statute relating to an object entirely different, is almost necessarily inoperative; unless among the few whose business it is to read statutes. To require the object of a law to be expressed in its title, with a reasonable degree of definiteness, is but an act of justice to those who are called upon to obey it. However averse we may be to the exercise of this delicate power of declaring laws unconstitutional, we cannot consider this act, so far as it purports to change the laws concerning the custody of runaway slaves, as constitutional.
If the title of this act be held to express its object, in the sense of the Constitution, the article 118 remains to all intents and purposes a dead letter.
In deciding that the portion of the law under which the sheriff claims is unconstitutional, we are not to be considered as saying that those portions- of the statute which are covered by the title, are unconstitutional; the decision of this latter point not being necessary.
It is therefore decreed, that that portion of the judgment of the district court decreeing the delivery of certain slaves to the sheriff of the parish of Orleans, and prohibiting the said defendant from-receiving that class of persons into custody, be reversed, and that the application of the plaintiff therefor be dismissed; the appellee paying the costs of this appeal.